Louise COLE and Densey Cole,
Plaintiffs–Appellants,

v.

Andrew WODZIAK, Defendant–Appellee.

No. 98–3030.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1999.

Decided March 2, 1999.

James L. Curtis, Scott A. Carlson (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Plaintiffs–Appellants.

Anthony J. Peraica, Thomas W. Garrette, Jr. (argued), Chicago, IL, for Defendant–Appellee.

Before ESCHBACH, EASTERBROOK, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

A jury awarded plaintiffs $4,500 in damages under the Fair Housing Act of 1968 after concluding that Andrew Wodziak, their landlord, had evicted them because they received a black friend in their apartment. They had asked for $50,000, and in administrative proceedings for $75,000. Later they sought more than $85,000 as attorneys' fees under 42 U.S.C. §§ 1988(b) and 3613(c)(2). A magistrate judge, presiding under 28 U.S.C. § 636(c) by mutual consent, whittled down the request by excluding time he thought unnecessary for a simple case (there had been no substantive motions and only three witnesses in addition to the parties themselves) or attributable to overstaffing (the firm representing plaintiffs assigned ten lawyers to the case). The magistrate judge next adjusted the results of the lodestar calculation (number of hours reasonably devoted to the litigation multiplied by the market rate for the attorneys' time) by subtracting all of the legal time devoted to the trial itself. Trial had been unnecessary, the judge ruled, because Wodziak offered $5,000 in settlement; all the trial accomplished was to reduce the take by $500. Next the judge multiplied the adjusted lodestar by 0.09, the ratio between the $50,000 demand and the outcome of trial, to produce a total of $4,445.62. He multiplied this sum by three and awarded plaintiffs $13,336.86 to cover their legal expenses. 1998 U.S. Dist. LEXIS 10650 (N.D.Ill.).

One step in this process was a clear error. The judge cut more than $26,000 from the lodestar because of a settlement offer. Both legal and factual mistakes occurred in the process. The legal problem is that the judge gave oral negotiations the same effect as a written offer of judgment under Fed.R.Civ.P. 68. A spurned Rule 68 offer, followed by a lower recovery at trial, precludes an award of costs (including attorneys' fees, when a statute defines them as part of costs) incurred after the offer's rejection. *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). But to obtain the benefits of Rule 68 a defendant must follow its requirements, which Wodziak did not. The factual problem is that we cannot be sure that there *was* an offer of settlement. The magistrate judge said that one had been made in chambers, but that conference was not transcribed, and the judge's memory may have played a trick on him. During trial Wodziak testified that he "would never settle", and at a sidebar conference defense counsel asserted that Wodziak "refused to offer a settlement amount." The judge stated at trial that these representations were accurate and did not attempt to reconcile his post-trial ruling (which was based on the existence of a $5,000 offer) with his mid-trial ruling that no offer had been made. Why this should have come up at trial is a mystery, given Fed.R.Evid. 408, but it did, and what transpired undermines the judge's later reliance on a supposed settlement offer.

But the judge gave a second reason: the low ratio of damages awarded to compensation demanded. True, a judge may not mechanically reduce the lodestar on account of partial success. *Dutchak v. Central States Pension Fund*, 932 F.2d 591, 597 (7th Cir.1991). So if a plaintiff asks for $50,000 and gets $45,000, a judge may not lop 10% off the lodestar and award the rest as the reasonable fee. When recovery is low *enough* in relation to the demand, however, the judge may jettison the lodestar apparatus and choose an appropriate fee using other means. So the Supreme Court held in *Farrar v. Hobby*, 506 U.S. 103, 114–15, 113

S.Ct. 566, 121 L.Ed.2d 494 (1992). See also *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Marek*, 473 U.S. at 11, 105 S.Ct. 3012. A paltry jury award—for example, $1 in *Farrar*—implies that the only reasonable fee is zero.

■ Plaintiffs recovered more than a pittance: Louise Cole received $2,000 in compensatory and $1,500 in punitive damages, and Densey Cole was awarded $500 in compensatory and $500 in punitive damages. They are prevailing parties and entitled to "reasonable" fees. In ordinary private litigation, however, a fee exceeding the damages usually is not "reasonable." Lawyers queue up to work at contingent fees in the 30% to 40% range, recognizing that low recoveries in some cases will be offset by better results in others. A fee 19 times the damages, which plaintiffs sought, is off the map.

Sometimes legal efforts that are reasonable *ex ante* look bad *ex post*. For example, a tort lawyer who believes that the victim is sure to recover either $900,000 or $100,000 (with equal likelihood) would invest up to $200,000 in pursuit of the claim (the $500,000 actuarial value of the case, times a 40% contingent fee), and the fact that the jury chose the $100,000 award would not make the commitment of time any the less reasonable. But that's not what happened here. Counsel devoted more than $85,000 worth of time to a claim that the plaintiffs valued at $50,000— and of course if the jury believed Wodziak they would recover nothing. Commitment of $85,000 in legal time to a claim with an expected value well below $50,000 was unreasonable both *ex ante* and *ex post*. That the final award was less than 10% of the demand highlights what should have been obvious earlier. *Farrar* holds that in such circumstances a judge may devise an award on a ground other than the number of hours times the billing rate.

Wodziak would have had a good reason to complain that the method the judge chose was the functional equivalent of awarding treble the damages as attorneys' fees (which, from the defense perspective, made this a quadruple-damages case). Although *Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), holds that attorneys'

fees in civil rights cases may be "reasonable" even when they exceed the damages recovered, four of the Justices would have proscribed that possibility, and a fifth—Justice Powell, whose vote was essential to the majority—expressed the view that fees should be less than the damages recovered unless some powerful factor justifies a higher award. 477 U.S. at 584–86, 106 S.Ct. 2686 (Powell, J., concurring). Justice Powell thought that the district judge had not abused his discretion in *Riverside* by finding that vigorous (and costly) pursuit of that case was essential to break down a pattern of police maltreatment of the Chicano community in the city. No similar findings were made in support of the attorneys' fee award in this case. To the contrary, the magistrate judge thought this a run of the mine case that did not contribute to the development of legal principles and would have little deterrent effect on other landlords in a metropolitan area as sprawling as Chicago.

Plaintiffs respond that the cumulative effect of small victories can be large, see *Hyde v. Small*, 123 F.3d 583 (7th Cir.1997), and they insist that courts should ensure that fees are high enough to induce attorneys to handle many similar cases. The question, though, is whether Andrew Wodziak, as opposed to the public fisc, should underwrite the effort to secure general deterrence of civil rights violations. Language in Justice Brennan's opinion in *Riverside* supports plaintiffs' position, but he spoke for only four Justices; four other Justices were unwilling to require individual defendants to pay for this public benefit, and Justice Powell deemed it proper only in unusual cases. Justice Brennan's rationale in *Riverside* implies that in order to induce the bar to take civil rights cases in which they may lose and recover no fees, the lodestar should be multiplied when plaintiffs win. But cases after *Riverside* reject multipliers that account for the risk of loss, observing that although the support of civil-rights litigation may be beneficial to the public weal, the fee-shifting statutes do not require defendants to cover the cost. *Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); cf. *Pennsylvania v. Delaware Valley Citizens' Coun-*

*cil for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). After *Dague* a fee is reasonable, or not, only in relation to the plaintiff's own case. *Hyde* holds that a plaintiff who suffers a slight injury and does not over-claim in court is entitled to a compensatory fee even if that fee exceeds the damages. It did not hold that a person who suffers a slight injury and makes an exaggerated claim should be treated similarly. Exaggerated claims impede settlement and consume scarce judicial resources. This trial may have been simple, with six witnesses in a swearing contest about who said what to whom, but it lasted three days, the median for a trial in the Northern District of Illinois,[†] and thus required a commitment of judicial resources disproportionate to both the anticipated and the actual recovery. Louise Cole, who now says that she would have accepted less than $2,000 (plus an apology) to settle the case, could have saved everyone a good deal of time and money, and opened a slot for another trial on the district court's calendar, by showing equal candor earlier. Cases such as *Farrar*—and, in this circuit, *Fletcher v. Ft. Wayne*, 162 F.3d 975 (7th Cir.1998), and *Simpson v. Sheahan*, 104 F.3d 998 (7th Cir.1997)—show that recovering less than 10% of the demand is a good reason to curtail the fee award substantially.

■ Although plaintiffs were prevailing parties, the district court readily could have concluded that the only reasonable fee was a percentage of the recovery, as in tort litigation. See *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir.1986). The actual award, more than five times plaintiffs' injury (which the jury assessed at $2,500), and roughly three times the total recovery (including punitive damages), cannot be called unjustifiably low, and is therefore

AFFIRMED.

---

[†] During fiscal year 1997, the most recent for which complete data are available, there were 281 civil trials in the Northern District of Illinois. Of these 88 took a single day, 43 required two, 37 spanned three days, and 113 lasted four or more. Thus three days is the median, although the mean is higher, because some of the trials in the four-or-more days category lasted longer than a week. (Sixteen took 10 days or more.) Administrative Office of the United States Courts, *Judicial Business of the United States Courts 1997* Table C–8 (1998).