**Brian CUNNINGHAM, Plaintiff,**

v.

**GIBSON ELECTRIC CO., INC., Defendant.**

**No. 97 C 7170.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 10, 1999.

Sherrie E. Voyles and Marisel A. Hernandez, Jacobs, Burns, Orlove, Stanton & Hernandez, Chicago, IL, for plaintiff.

Edward W. Bergmann and Noah A. Finkel, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Only one matter remains for resolution in this Fair Labor Standards Act ("FLSA") action in which plaintiff Brian Cunningham ("Cunningham") prevailed against defendant Gibson Electric Co., Inc. ("Gibson") after a bench trial: Cunningham's request for an award of attorneys' fees.[1] As a result of the parties' compli-

---

1. Gibson has advised that it is not appealing the adverse decision reached in this Court's

Findings of Fact ("Findings") and Conclusions of Law ("Conclusions") and embodied

ance with this District Court's General Rules 46 and 47, with the final Gibson Memorandum in Opposition ("G.Mem.") having been filed on August 6, 1999, the matter is ripe for decision.

Gibson objects to both components of Cunningham's lodestar calculations that form the predicate for his claim: (1) the hourly rates sought for the services of Cunningham's several lawyers and (2) the number of hours reflected for the rendition of those services in the motion for fees. Although in part Gibson's counsel has effectively merged those components in its last submission (G.Mem.1) by advancing a bottom-line effort to contrast Cunningham's claimed fees ($144,347.50) with the lower aggregate figure that Gibson's lawyers charged their client ($47,155), both the substantial difference in the hourly rates involved for the two sides' lawyers and numerous other relevant factors combine to make that attempted comparison an impermissible blurring of the two separate analytical determinations. This opinion will therefore address the appropriate hourly rates first, then the appropriate time charges, before turning to the ultimate question of whether the product of those two components represents the properly allowable fees.

As for the subject of hourly rates, under the circumstances disclosed by the respective submissions Gibson's counsel advances a patently untenable position in urging these rates for Cunningham's several lawyers involved in the case:

Sherrie Voyles ("Voyles," a lawyer since 1990)   $175
Marisel Hernandez ("Hernandez," a lawyer since 1982)   175
Joseph Burns ("Burns," a lawyer since 1979)   200
Bruce Yeggy ("Yeggy," a lawyer since 1998)   110

Noah Finkel ("Finkel"), an associate with Seyfarth, Shaw, Fairweather & Geraldson who served as the lead counsel for losing defendant Gibson, had been in practice for less than four years at the time of the preparation and trial (he was admitted to the bar in November 1994 and joined the law firm in June 1995 after completing a

in a judgment for $37,808.78 in Cunning-

District Court clerkship). Finkel's current hourly rate is $185, having jumped $20 per hour in each of the last two years. Quite apart from the fact that he lost the case, while the lawyers whose rates he seeks to reduce were the winners (something for which this Court does not fault Finkel, for he did a creditable job for his client in a losing cause), it takes real chutzpah for Finkel to push for rates that so denigrate more experienced practitioners with solid credentials by pushing those rates below his own fourth-year-associate figure. Nothing in the quality of Finkel's reasonably workmanlike performance in this action justifies that implicit position of self-perceived superiority.

But having said that, this Court will not punish Gibson (or its counsel) for such attempted overreaching. This Court has independently reviewed the exhibits to Cunningham's motion and supporting memorandum, and it has arrived at conclusions that fall between the parties' respective contentions:

1. Even apart from the point already mentioned, Gibson's effort to poormouth Cunningham's several lawyers ignores the substantial case law authority that stresses the need to (a) determine the prevailing market rates in the relevant community (*Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) and its progeny, including such cases as *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310, 1312 (7th Cir.1996)) and (b) in doing so, not to be bound by any lower rate that the lawyers' law firm may charge its other clients because of other factors such as the firm's social commitments (see, e.g., the discussions in such cases as *Central States Southeast and Southwest Areas Pension Fund v. Central Transp., Inc.*, 76 F.3d 114, 116–17 (7th Cir.1996); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1149 (7th Cir.1993); *Barrow v. Falck*, 977 F.2d 1100, 1105–06 (7th Cir.1992)).

ham's favor.

2. It is true that some of the affidavits submitted by Cunningham's counsel from other lawyers might arguably support somewhat higher rates than this opinion is approving. But those affidavits are thin on demonstrating total parallelism between the bases used by the affiants for their opinions and the circumstances of the particular lawyers involved in this action. This Court therefore declines Cunningham's invitation to enhance the hourly rates to a new high for the several lawyers involved. As *People Who Care*, 90 F.3d at 1312 has said:

> While each court should certainly arrive at its own determination as to a proper fee, rates awarded in similar cases are clearly evidence of an attorney's market rate.

Accordingly this Court concludes (a) that the reasonable hourly rate for Voyles' services is the same $225 that she has been awarded in two recent ERISA cases, (b) that the same $225 rate (also most recently awarded by one of this Court's colleagues) applies to Hernandez as well, (c) that the few hours spent by Burns should carry a $250 hourly rate in light of his described credentials and seniority and (d) that the time spent by Yeggy is compensable at a $135 hourly price tag.[2]

To shift to the time expended by the several Cunningham lawyers, this Court has reviewed (1) each of the detailed challenges that has been advanced by Gibson, (2) the detailed item-by-item responses in Cunningham's Memorandum of Law and (3) Gibson's final Memorandum in Opposition. Based on its careful review, this Court finds the numerous challenges to be without merit, in substantial part though not entirely because they so obviously partake of impermissible hindsight and second guessing. Just to choose one obvious ex-

ample, the objections to the time spent by Cunningham's lawyers on the Final Pretrial Order ("FPTO") ignore the laboring-oar duty that this District Court's General Rule 5.00 imposes on every plaintiff's counsel for the initial preparation of the FPTO that sets out the game plan for trial. Similarly, any party who is confronted with serious motions in limine (as Cunningham's counsel were in this case) cannot afford to treat such motions lightly, in the optimistic hope that the court will rule favorably even if counsel does less than his or her best in addressing them.

But by far the largest area of Gibson's objection relates to its claim that more than 100 hours of the nearly 300 hours devoted by Cunningham's counsel to trial were unreasonably spent. This Court of course observed the trial itself with great care (as a bench trial, it required the detailed Findings and Conclusions that this Court ultimately entered). And although Cunningham's out-of-court preparatory activity was not of course subject to comparable scrutiny, there is no reason to believe (and this Court does not conclude) that those efforts and the time spent represented anything other than what was reasonably required to do the job of trying—and, importantly, of winning—the case.

In that respect there is also a good deal of irony in Gibson's argument that "devoting more dollars worth of time than the maximum amount of dollars the claim possibly could be worth is an unreasonable expenditure of attorney resources" (as the next paragraph of this opinion reflects, that per se assertion overstates something that was said in the course of discussion in *Cole v. Wodziak*, 169 F.3d 486, 489 (7th Cir.1999)). After all, on Gibson's own presentation it spent $47,000 on lawyers' fees

---

**2.** In another example of nerviness, Finkel's affidavit discloses that the time of Seyfarth, Shaw's first year associate Joshua Van Kampen was billed to Gibson at $135 an hour, while first year associate Yeggy is urged to be worth just $110. Again this Court will not

accept the invitation to look down its nose at lawyers (either new or old) on the plaintiff's side of such lawsuits, as seems implicit (though not explicit) in the Gibson submission.

itself (G.Mem.1)—plus incurring the risk of being subjected to fee shifting in an amount that, even after all of the urged whittling down, Gibson's counsel still pegs at $73,000 (G.Mem.3)—to try what its counsel calls a "simple straightforward" case (G.Mem.1)[3] "worth not more than $38,000" (G.Mem.2). For Gibson to criticize Cunningham and his counsel as not being "economically rational" (id.) seems very much a case of the pot calling the kettle black.

This Court is of course mindful of what Judge Easterbrook, speaking for a Seventh Circuit panel, said in *Cole v. Wodziak*, 169 F.3d 486 —including the dictum (169 F.3d at 488) that Gibson has unpersuasively sought to convert into its own per se assertion referred to earlier:

> In ordinary private litigation, however, a fee exceeding the damages usually is not "reasonable."[4]

But that dictum clearly does not call for such an ironclad limitation in non-"ordinary" litigation such as FLSA or employment discrimination cases, categories in which Congress has weighed in on the plaintiffs' side of the scales as a policy matter—and the dictum would seem to be even less in point when a plaintiff employee's need to try a claim to verdict, even though the expenditure of lawyer resources in doing so is out of proportion to what is at stake for the employee client, is driven by a lack of economic rationality on the part of the employer in resisting a "simple" (and bona fide) claim at a cost

well in excess of that claim, instead of "simply" honoring the claim.

It is no accident that the same judge who wrote *Cole* recognized the force of like considerations in *Barrow*, 977 F.2d at 1103–04 (what was said there of Section 1988 also applies, of course, to the FLSA statutory provision for fee awards):

> Although private parties looking only to their own interests would not invest more in litigation than the stakes of the case, the combination of self-interest with the American Rule on the allocation of legal costs means that people can get away with small offenses.... Section 1988 helps to discourage petty tyranny. Awarding the full cost of litigation, which looks excessive in the single case, is sensible because it aids in the enforcement of rules of law.

Hence this Court rejects the Hobson's choice that Gibson would thrust on an employee such as Cunningham, who has been the victim of far more than a "small offense" or "petty tyranny" in the form of his employer's protracted nonpayment of statutorily-mandated overtime: Either try to find a lawyer who will handle your case without the prospect of receiving anything even approaching adequate compensation if the case is won (and of course taking the risk of being paid nothing if the case is lost), or give up your case without a fight, thus rewarding your employer for having flouted the law.[5]

In hindsight it seems clear that *both* sides could well have been better advised if

---

**3.** It would appear from that mischaracterization that the case that Gibson's counsel participated in must have been a different one from the case over which this Court presided and to which it gave careful heed. As the Findings and Conclusions clearly reflect, Cunningham's counsel had to build the case brick by brick, with a wealth of detail needed to support the necessary inferences, credibility determinations and so on. Gibson's cause is not assisted by such inaccuracies.

**4.** [Footnote by this Court] It is worth noting parenthetically, however, that the *Cole* panel *affirmed* a fee award in an amount that was three times plaintiffs' damages recovery in a Fair Housing Act case. *Cole* was complicated

by a major disparity between plaintiffs' demand and the jury's award of substantive damages (the award was less than 10% of the demand), which led the Magistrate Judge to cut back the lodestar figure dramatically in calculating the fee award. Still and all, the court's ruling made it clear that situations where Congress has created a private cause of action as a matter of public policy are not "ordinary private litigation."

**5.** In this situation the third potential alternative—for Cunningham to have pursued his claim through litigation on his own without the assistance of a lawyer—was of course a patent impossibility.

Gibson had paid Cunningham's claim—perhaps reduced somewhat because of Cunningham's risk of losing, even if Gibson were really convinced that this was indeed a "simple straightforward" case—plus a much reduced amount in the attorneys' fees that had been incurred by Cunningham's lawyer at a time well short of trial. But such second guessing simply will not do for purposes of the present analysis. When the case was in fact forced to trial, Cunningham's counsel were well justified in expending the time and effort that they reasonably viewed as necessary in order for their client to prevail—and once again, second guessing will not do on that score either.[6]

■ In sum, this opinion's establishment of a reasonable hourly rate for each of Cunningham's attorneys, coupled with its rejection as unwarranted of Gibson's numerous challenges to the time spent by those attorneys as assertedly excessive, produces this lodestar figure up to the time of the procedure dealing with this fee dispute:

| Name of Lawyer | Hours | Rate | Lodestar |
|---|---|---|---|
| Voyles | 409.8 | $225 | $ 92,205.00 |
| Hernandez | 151.5 | 225 | 34,086.50 |
| Burns | 8.2 | 250 | 2,050.00 |
| Yeggy | 15.0 | 135 | 2,025.00 |
| Total | 584.5 | | $130,367.50 |

This Court further finds, taking all relevant considerations into account, that the lodestar figure is indeed a "reasonable attorney's fee" within the meaning of FLSA.

As for the other components of the fee award, Gibson has confirmed (G.Mem. 3 n. 1) the reasonableness of Cunningham's claim of $8,222 for services relating to the issue of fees (the time spent since May 14, 1999), though Gibson does challenge as unnecessary $562.50 in time charges incurred by Cunningham's lawyer for a debtor's citation. This Court agrees with that last contention, so that the total fee award it approves aggregates $130,367.50 plus $8,222, or $138,589.50. Finally, Gibson also confirms (G.Mem. 3 n. 1) that it has no objection to the $1,570.61 claimed by Cunningham as expenses other than taxable costs, so that the total amount to be awarded pursuant to this opinion is $140,160.11.

### Conclusion

For the reasons stated in this memorandum opinion and order, Gibson is ordered to pay to Cunningham the sum of $140,160.11, and judgment is ordered to be entered in favor of Cunningham and against Gibson in that amount.[7] This opinion disposes of the final issue remaining in the case.

---

6. Essentially the message that Gibson's counsel's position would give to an employee such as Cunningham (and to his lawyers) is the equivalent of "Because your case is worth only $38,000 and it will take so much more to try it to judgment, give it up"—for no competent lawyer could afford to take it on under what Gibson's counsel would view as rational economic terms. And of course the corresponding message that same position conveys to an employer such as Gibson is to violate its employees' rights with impunity because the employees cannot afford to pursue such claims in court. This Court cannot and does not ascribe to Congress the approval of such cynical messages in its enactment of FLSA, with that statute's provision for "a reasonable attorney's fee" to a prevailing plaintiff.

7. G.Mem. 12 suggests that the amount awarded here should be reduced by $1,890.44 (5% of the judgment recovered by Cunningham against Gibson on the merits) because of the August 27, 1997 Retainer Agreement between Cunningham and the law firm representing him (G.Mem.Ex.J). Although the Retainer Agreement is awkwardly phrased, it does seem to read as though the 5% of judgment figure must be paid by Cunningham as a contingency fee in all events, even though this Court has been called upon to determine a *reasonable* fee in accordance with the statute. If that is indeed the intent of the Retainer Agreement, this Court declares that portion of it to be unenforceable: Cunningham's attorneys are *not* entitled to be paid, in the aggregate, more than a reasonable fee. Accordingly the requested deduction in amount will not be made, on the understanding that no charge will be made by Cunningham's lawyers for that additional $1,890.44.