Filed 12/14/15  Yankey v. City of Los Angeles CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ESTAZE YANKEY et al., | B259880 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC425757) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mel Red Recana, Judge.  Affirmed.

Blithe S. Bock, Deputy City Attorney, Michael N. Feuer and Amy Jo Field, City Attorneys for Defendants and Appellants.

Law Offices of Dale K. Galipo, Dale K. Galipo and Thomas C. Seabaugh for Plaintiffs and Respondents.

_____

The City of Los Angeles and Los Angeles Police Department (LAPD) Officer Daniel Bunch were found liable in a wrongful death action involving the police shooting of Dontaze Storey. Storey's son, Dontaze Storey, Jr., was awarded $750,000 in damages.[1] In this appeal, the City challenges the trial court's award of $943,263.75 in attorney's fees under the federal fee shifting statute for civil rights actions. (42 U.S.C. § 1988.)[2] We affirm the attorney's fee award.

## PROCEDURAL HISTORY[3]

The complaint was initially filed on Dontaze's behalf by his mother, Estaze Yankey, on November 12, 2009. It alleged causes of action for negligent wrongful death and civil rights violations under section 1983. Trial began on January 8, 2014. Dontaze was represented by various plaintiff's counsel during the four years it took to bring the case to verdict. Shawn Dantzler was retained on November 13, 2008, and handled the matter through May 2012. He conducted substantially all the investigation and discovery in this case. In 2012, Dale Galipo and Humberto Guizar substituted into the case. They represented Dontaze at trial. Galipo was assisted by Thomas Seabaugh, an associate who assumed primary responsibility for the day to day management of the case from May 2012 through trial.

All four attorneys submitted motions for attorney's fees after the jury returned its verdict finding excessive force was used to cause Storey's death. Dantzler sought $105,543.75 in fees for his work, reflecting 281.45 hours at a rate of $375 per hour. Dantzler also submitted an itemized account of his time from 2008 to 2012, including

---

[1]   Because they share appellate counsel and their interests are aligned in this matter, we will refer to appellants jointly as the City. Additionally, we will refer to the decedent by his last name, Storey, and to his son by his first name, Dontaze.

[2]   All further section references are to title 42 of the United States Code unless otherwise specified.

[3]   We need not repeat the facts underlying the shooting and death of Dontaze Storey because a more thorough account of it has been provided in our opinion affirming the jury's verdict. (*Yankey v. City of Los Angeles* (Dec.__, 2015, B257780) [nonpub. opn.].)

client meetings, filing the complaint, taking depositions, attending court hearings, and conducting discovery. Galipo, who was lead trial attorney on the case, requested $612,720 for 765.9 hours of work at a rate of $800 per hour. Seabaugh sought $350 per hour for 390.5 hours for a total of $135,135. A declaration from Galipo set forth his extensive experience litigating civil rights cases. Both Galipo and Seabaugh submitted time records showing their work on the case. Galipo explained that, given his extensive experience in litigating civil rights cases, his rate of $800 per hour had been granted in two similar civil rights cases in calculating attorney's fees.

Guizar sought $218,400 in fees, reflecting 312 hours at $700 an hour. In his declaration in support of the fee motion, Guizar explained it was particularly difficult to try the matter without the testimony of expert witnesses for the plaintiff and that several novel yet important evidentiary and legal issues were raised during the course of litigation. Guizar appended several pages accounting for the time he spent working on various aspects of the litigation from 2012 through the end of trial. Of the 312 hours detailed, 152 hours were spent at trial.

The City opposed the attorney's fees motions on the grounds that Dontaze was not the prevailing party and the fee requests were unreasonable. After consideration of the moving papers and opposition, the trial court granted each of the motions for attorney's fees, finding Dontaze to be the prevailing party and entitled to attorney's fees. The trial court detailed in its order the number of hours and rate each attorney submitted. As to Dantzler, it found reasonable his entire request of $105,543.75. It reduced Seabaugh's fees from $135,135 to $100,000 and awarded Galipo all of the $612,720 he requested. It also reduced Guizar's requested fees from $218,400 to $125,000. The City timely appealed from the trial court's fee award.

## DISCUSSION

The sole issue in this appeal is whether the trial court properly awarded $943,263.75 in attorney's fees to Dontaze.[4] We find it did.

A trial court may exercise its discretion to award "a reasonable attorney's fee as part of the costs" to the prevailing party in a proceeding to vindicate the party's civil rights. (42 U.S.C. § 1988.) As the term "prevailing party" has been construed, the plaintiffs may be considered a "prevailing party" if they "'succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' [Citation.]" (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 433 (*Hensley*); see *Texas Teachers Assn. v. Garland School Dist*. (1989) 489 U.S. 782, 791-792.)

Thus, the threshold issue is whether Dontaze is a prevailing party. The City contends he is not because he failed to recover on any of his federal claims. In the first amended complaint, Dontaze alleged a negligent wrongful death cause of action[5] under state law as well as section 1983 claims under federal law. A Fourth Amendment claim of excessive force was asserted under section 1983 on behalf of Storey by Dontaze as his successor in interest. The excessive force allegations also underlay Dontaze's wrongful death claim. The complaint further alleged a section 1983 claim based on Dontaze's personal "Fourteenth Amendment right to substantive due process right to enjoy the care, companionship, familial relationship, and society of plaintiffs' birth father, and a right to be free from arbitrary and unreasonable government intrusions into their family unit."

---

[4] The City contends as a threshold matter that Dontaze lacked standing to bring the wrongful death claim. Accordingly, the entire judgment must be reversed, including the trial court's attorney's fee award. As we discuss at length in our companion opinion, substantial evidence supports the jury's finding that Dontaze is Storey's son and therefore has standing to sue. (*Yankey v. City of Los Angeles* (Dec.__, 2015, No. B257780) [nonpub. opn.].) We summarily reject this ground for reversal of the attorney's fee award.

[5] Dontaze was subsequently allowed to amend his complaint to substitute a wrongful death claim based on battery rather than negligence.

The jury found excessive force was used against Storey, which caused his death, but then found that Dontaze's Fourteenth Amendment protections were not violated. The City asserts the jury verdict awarding Dontaze "damages for the loss of [Storey's] love, companionship, comfort, care, assistance, protection, affection, society, moral support, training and guidance" thus relates solely to the wrongful death claim and not to Dontaze's Fourth or Fourteenth Amendment claim. According to the City, Dontaze is not entitled to attorney's fees under a federal fee shifting statute if he failed to recover any damages under either of his federal causes of action.

It has been held, however, that "[w]hen the plaintiff in a civil rights action prevails on a pendent state claim based on a common nucleus of operative fact with a substantial federal claim, fees may be awarded under § 1988." (*Carreras v. City of Anaheim* (1985) 768 F.2d 1039, 1050, abrogated on other grounds by *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352; *Seaway Drive-In, Inc. v. Clay* (6th Cir. 1986) 791 F.2d 447, 451.)[6] "Claims arise from a common nucleus of operative fact where fee-supporting claims are so interrelated with non-fee claims that plaintiffs 'would ordinarily be expected to try them all in one judicial proceeding.' " (*Gerling Global Reinsurance v. Garamendi* (2005) 400 F.3d 803, 808-809.) Here, there is no question that the federal fee-supporting claims are interrelated with the state law non-fee claims. They are based on a common nucleus of operative fact—the shooting death of Storey. Indeed, the jury's excessive force finding related to both the Fourth Amendment-based claim as well as the wrongful death claim. Thus, the trial court properly exercised its discretion to award attorney's fees under section 1988.

Having decided Dontaze's entitlement to attorney's fees, we next consider whether the fees awarded were correctly calculated. The Supreme Court has issued guidelines to calculate a reasonable attorney's fee, indicating "[t]he most useful starting

---

[6] The City failed to discuss or cite to these cases, instead relying on *Farrar v. Hobby* (1992) 506 U.S. 103 (*Farrar*) for the proposition that Dontaze's award is a technical victory which does not justify a fee award under section 1988. *Farrar* does not support the City's position and, as we discuss below, is distinguishable.

5

point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (*Hensley, supra,* 461 U.S. at p. 433.) This "lodestar" calculation must be shown by the party seeking the fee award by documenting the appropriate hours expended and hourly rates. (*Id.* at p. 437; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) After calculating the lodestar, a trial court should exclude hours not reasonably expended, such as excessive or redundant time. (*Hensley, supra,* at pp. 433-434.) The trial court may also adjust the lodestar up or down based on the following factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." (*Hensley, supra,* 461 U.S. at p. 430, fn. 3; *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1307 (*Harman*).)

Where the plaintiff has prevailed on some claims, but not others, the high court then directs the trial court to consider two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" (*Hensley, supra,* at p. 434.)

On appeal, the trial court's fee award is reviewed for an abuse of discretion. (*Id.* at p. 437; *PLCM Group, supra,* at p. 1095.) This is due to the trial court's "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (*Hensley, supra,* at p. 437.)

We find the trial court did not abuse its discretion in this case. Each attorney presented the trial court with time records documenting the services performed and the reasonable hourly rate for an attorney with his level of experience and expertise in civil

6

rights matters. Each fee motion was supported by evidence of the hourly rates and fees given to similarly situated attorneys in similar cases. The trial court used these rates to calculate the lodestar amounts and then made adjustments to them, mostly downward, taking into account the City's arguments that the fees sought were unreasonable and that Dontaze did not prevail on all of his claims. The trial court's calculation adhered to the norms set forth by the United States Supreme Court in *Hensley.*

The City nonetheless argues the fee award should be reversed due to the trial court's failure to specifically articulate how the award was calculated, thus demonstrating that it did not fully consider the requisite factors in its decision. There is no requirement the trial court identify each and every factor it considered in calculating the lodestar or in making a subsequent adjustment. Indeed, *Hensley* merely requires a trial court to "provide a concise but clear explanation of its reasons for the fee award." (*Hensley, supra,* at p. 437.)

Here, the trial court properly conducted a lodestar analysis as described above. It also concisely described the City's opposition to each of the fee motions: Dontaze was not entitled to attorney's fees because he was not the prevailing party and achieved a minimal level of success, having received zero section 1983 damages. The trial court further discussed in detail the experience and work each attorney had set forth in the moving papers. It noted the "very disadvantageous procedural posture" and difficult circumstances which plaintiff's counsel found themselves in prior to trial. It is apparent from the ruling that the trial court considered the relevant factors identified in *Hensley* to determine its adjustments in the lodestar, including the novelty and difficulty of the questions involved, the experience, reputation, and ability of the attorneys, the customary fee, the time and labor required, and the skill necessary to perform the legal service properly. (*Hensley, supra,* at p. 430.) The record shows a direct correlation between the amount awarded and the evidence provided by plaintiff's counsel. (*Kerr v. Screen Extras Guild, Inc.* (9th Cir. 1975) 526 F.2d 67, 69-70; *Harman, supra,* 136 Cal.App.4th at p. 1307.) Nothing more was required from the trial court.

7

In an attempt to reargue the facts, the City sets forth numerous reasons why the trial court should have further reduced the lodestar according to the established factors, particularly on the ground that Dontaze only achieved partial success on his claims. The City again relies on its argument thats Dontaze only recovered on his wrongful death claim and not on his civil rights claim, thus negating any award under section 1988. The City also argues he failed to prevail against one of the officers named as a defendant in the case. Further, Dontaze recovered a fraction of his initial claim for $10 million in damages. Given these circumstances, the City contends Dontaze achieved a "technical victory" which does not justify such a high fee award under *Farrar, supra,* 506 U.S. 103. We disagree.

In *Farrar*, the plaintiff filed a lawsuit alleging a violation of his civil rights under section 1983 and demanded $17 million from six defendants. After 10 years of litigation and two appeals, he received one dollar from one defendant. (*Farrar, supra,* 506 U.S. at p. 107.) Given these facts, the Supreme Court found defendant to be the prevailing party, but held that it was a technical victory which did not justify an award of attorney fees under section 1988. (*Id.* at p. 115.)

As we discussed above, the trial court properly exercised its discretion to award attorney's fees. Even under the *Farrar* holding, Dontaze would be considered the prevailing party, having achieved relief on the merits of his claim. (*Farrar, supra,* at p. 111.) The question we now address is whether his fees should be reduced because he failed to recover damages for his federal claims.

The jury found excessive force was used against Storey, resulting in his death. It is ambiguous as to whether the excessive force finding applied to the federal or state law claims or to both. The City contends a section 1988 fee award is not supported precisely because of this ambiguity since it is just as likely that Dontaze achieved victory only under his wrongful death claim. The City, however, stipulated to the verdict form which resulted in this ambiguity and thus has waived any right to complain about it. (*Lynch v. Birdwell* (1955) 44 Cal.2d 839, 851.) Dontaze's federal and state law claims are inextricably intertwined. Given these circumstances, it is not the case that Dontaze

8

prevailed on a state law claim that was wholly unrelated to his federal claims. (*Hensley, supra,* 461 U.S. at p. 434.) The Supreme Court has "made clear that plaintiffs may receive fees under § 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That 'result is what matters,' . . . A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.' [Citation.]" (*Fox v. Vice* (2011) 563 U.S. 826 [131 S.Ct. 2205] (*Fox*).)

Thus, the plaintiff's nominal recovery in *Farrar*, which formed the basis to deny attorney's fees there, is very different from Dontaze's substantial $750,000 recovery here. *Farrar* is distinguishable and does not require a finding that the trial court abused its discretion in awarding $943,263.75 in attorney's fees in this case. Indeed, the post-*Farrar* cases on which the City relies demonstrate the reasonableness of the trial court's award here. In each of those cases, the attorney's fee award was unreasonable because it constituted "a high multiple of damages." (*Harman, supra,* 136 Cal.App.4th at p. 1314; *Corder v. Brown* (9th Cir. 1994) 25 F.3d 833, 841 [$240,695 fee award on $24,006 damages]; *Migis v. Pearle Vision* (5th Cir. 1998) 135 F.3d 1041, 1048 [fee award over six and one-half times the judgment]; *Dannenberg v. Valadez* (9th Cir. 2003) 338 F.3d 1070, 1071 [$57,566 fee award for $9,000 judgment]; *Cole v. Wodziak* (7th Cir. 1999) 169 F.3d 486 [fee award 19 times damages].) That is not the case here, where the fee award is proportionate to the damages, at only 1.25 times the damages award.

Finally, the City contends the fee award was excessive because the trial court should have excluded time claimed by Guizar and Galipo which were excessive and duplicative. For example, the City complains Galipo billed two hours to review Officer Malabuyo's 49-page deposition transcript. It also challenges Guizar's fee request for "jury trial" time while not examining a single witness and remaining silent throughout all legal arguments. On this issue, we are cautioned by the Supreme Court against "appellate micromanagement" of fee awards. (*Fox, supra,* 131 S.Ct. at p. 2216.) The trial courts are tasked with doing "rough justice, not [] achiev[ing] auditing perfection. So trial

9

courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." (*Ibid.*) The trial court, having presided over this case for four years, is in the best position to calculate the fee award. For example, it determined Guizar was not entitled to his entire fee request, reducing it from $218,400 to $125,000. We decline to second-guess the trial court's discretion.

## DISPOSITION

The attorney's fee award is affirmed. Respondents are awarded costs on appeal.


BIGELOW, P.J.

We concur:


FLIER, J.


GRIMES, J.

10