In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-2742, 99-2854, 00-1701 & 00-1786

Miguel Perez,

Plaintiff-Appellee, Cross-Appellant,

v.

Z Frank Oldsmobile, Inc.,

Defendant-Appellant, Cross-Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 8950--Harry D. Leinenweber, Judge.

Argued June 1, 2000--Decided July 31, 2000

Before Bauer, Easterbrook, and Manion, Circuit Judges.

Easterbrook, Circuit Judge.   This $8,000 dispute about a used car has led to an $800,000 judgment against Z Frank Oldsmobile. Punitive damages exceeding $500,000 and attorneys' fees near $240,000 make up the bulk of the award. These damages are at least an order of magnitude too high, and final decision about attorneys' fees must abide the outcome on remand.

Jack Bowler bought a new car from Z Frank in 1993, trading in his 1990 Oldsmobile Cutlass Supreme. The odometer showed about 28,000 miles. Z Frank resold the car to Miguel Perez, who had asked to buy a single-owner, low mileage auto. Perez drove the Oldsmobile some 50,000 miles through 1997. When he offered it in trade to a different dealer, however, he learned that the odometer was incorrect. By tracing the chain of title back with the aid of state authorities, Perez learned that he had been the car's eighth owner and that Moe Pour (the fourth owner, doing business as Portage Auto Sales) had rolled the odometer back roughly 70,000 miles.

Perez sued Z Frank and Pour under 49 U.S.C. sec.32710(b), which creates jurisdiction to enforce the Motor Vehicle Information and Cost Savings Act of 1972, recodified in 1994 as Chapter 327 of Title 49. Section 32703 prohibits odometer tampering. Z Frank did not violate

sec.32703, but sec.32705(a) required it either to disclose the Oldsmobile's true mileage or confess inability to determine that mileage, and Z Frank did neither. Perez believes that Z Frank should have figured out from General Motors' warranty records, which maintenance workers accessed by computer, that a rollback had occurred. This supported a claim under sec.32710(a):

A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater.

Illinois has an essentially identical provision, 625 ILCS 5/3-112.1(e)(1), adding that "[a]ny recovery . . . under this Section shall be offset by any recovery made pursuant to the federal Motor Vehicle Information and Cost [sic] Act of 1972." 625 ILCS 5/3-112.1(e). Both federal and state statutes provide that violators must reimburse prevailing plaintiffs' legal expenses. Perez also sought to recover damages under state tort law.

Perez paid Z Frank $11,000 for the car. A jury's special verdict establishes that the difference between fair market value of the car, given its actual mileage, and the actual purchase price was $7,900. The jury also assessed damages of $3,000 for repairs required by the car's extra mileage, $10,000 for loss of use while the car was being repaired, $3,600 for finance charges on the loan Perez took out to buy the car, and $30,000 for "aggravation, humiliation, or inconvenience", for total compensatory damages of $54,500. In post-judgment motions the district judge chopped the compensatory award down to $11,500, stating that the evidence did not establish that the difference in mileage caused the losses of which Perez complains. 1999 U.S. Dist. Lexis 9462 at *4-5 (N.D. Ill. June 10, 1999). Perez appeals, contending that the jury's figure was justified, but we think that any error runs in Perez's favor. The $7,900 difference between the $11,000 market value of a car with 28,000 miles (as Perez supposed) and the $3,100 value of a car with about 100,000 miles (the actual figure) reflects elements such as anticipated repair costs and diminished use. That's why a high-mileage car sells for less than a low-mileage car. To allow cumulative awards for the difference in market value, and repairs, and loss of use, and "inconvenience," is quadruple counting. Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955 (7th Cir. 1998). See also Haluschak v. Dodge City of Wauwatosa, Inc., 909 F.2d 254 (7th Cir. 1990) (describing damages of $7,500 before trebling in another odometer case as

excessive). Even if Z Frank sold Perez a hunk of scrap with no engine and square wheels, the loss could not logically exceed the purchase price less salvage value, for Perez could sell it to a junk yard and buy a functioning car. As for the finance charge: a buyer's loss does not depend on how much of the purchase price was borrowed or how long it took to repay the loan. To evaluate economic loss correctly, the court should add prejudgment interest on the overpayment (here $7,900) from the time of sale, using the rate at which the judgment debtor pays for capital. See In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1331-33 (7th Cir. 1992). The buyer loses the use of this money and should be compensated for its time value whether he buys the car with cash or on credit. But Perez does not seek prejudgment interest, and Z Frank does not contend that $11,500 is too high, so we leave the compensatory damages as the district judge set them.

In separate answers, the jury concluded that Z Frank misstated the mileage "with the intent to defraud plaintiff" and that a punitive award is warranted. The jury assessed $550,000 in punitive damages against Z Frank. The "intent to defraud" finding required trebling of the award for the odometer rollback. The judge deducted the entire treble-damages award of $34,500 from the punitive award, cutting it to $515,500. Thus the total judgment against Z Frank after all post-trial motions was $550,000: $11,500 in compensatory damages, $23,000 (double this) to achieve trebling under the odometer statutes, and $515,500 in punitive damages. Perez correctly observes that the district court committed a logical error in this process. It reduced the punitive award because Illinois law forbids cumulative damages multipliers and punitive damages for a single wrong. See, e.g., Harris v. Manor Healthcare Corp., 111 Ill. 2d 350, 366, 489 N.E.2d 1374, 1381 (1986); Verdonck v. Scopes, 226 Ill. App. 3d 484, 491, 590 N.E.2d 545, 550 (2d Dist. 1992). The district judge therefore should have reduced the punitive award by $23,000, to $527,000, rather than by the full odometer award after trebling. The total then would have been $561,500 rather than $550,000. But for reasons yet to come the award must be reduced rather than increased.

Z Frank's claims of trial error are unpersuasive and do not require discussion. As for the sufficiency of the evidence: Pour rather than Z Frank did the tampering, and it is not clear that anyone at Z Frank lied to Perez; the most one could say is that the sales staff should have known what the maintenance staff either knew or should have deduced from GM's database. Still,

Z Frank the corporation "knew" what its maintenance workers knew, and it did not have in place any procedures to disseminate this information, though managers must have appreciated that failure to communicate could lead its sales force to misrepresent matters on occasion. Because Z Frank does not contest the jury's conclusion that it misstated the mileage "with the intent to defraud", we need not pursue the question whether any person (or the corporate entity) acted with that mental state. Cf. Farmer v. Brennan, 511 U.S. 825 (1994). Frauds often escape detection, and the need to augment deterrence of concealable offenses is a principal justification of punitive damages. See A. Mitchell Polinsky & Steven Shavell, Punitive Damages: An Economic Analysis, 111 Harv. L. Rev. 869 (1998); Richard Craswell, Deterrence and Damages: The Multiplier Principle and its Alternatives, 97 Mich. L. Rev. 2185 (1999).

Although a damages multiplier of some kind is in order, what is the right multiple? Optimal deterrence is achieved when damages equal the harm done by the wrong, divided by the probability of detecting the injury and prosecuting the claim. This is an application of Gary S. Becker, Crime and Punishment: An Economic Approach, 76 J. Pol. Econ. 169 (1968), a theory of sanctions that played a role in his receipt of a Nobel Prize in 1992. For example, if a wrong causes $5,000 injury and is redressed one time in five, the optimal damages are $25,000. That redresses the injury to victims as a whole, and the injurer then can decide what precautions are appropriate. (A firm such as Z Frank must work out, for example, how much to spend investigating the history of the used cars it receives and coordinating the operations of its sales and maintenance staffs.) For a more complete explanation applied to punitive damages, see Keith N. Hylton, Punitive Damages and the Economic Theory of Penalties, 87 Geo. L.J. 421 (1998). The punitive award even as reduced by the judge is 45 times compensatory damages (and 65 times the difference in market price, the best measure of both the customer's loss and the dealer's gain). Are odometer rollbacks detected that infrequently? When it is so hard to be certain, it is appropriate to rely on rules of thumb. Both the state and federal odometer statutes supply such a rule: treble damages. Both say that the wrongdoer "is liable for 3 times the actual damages or $1,500, whichever is greater." They do not say something like "3 times the actual damages, or $1,500, or any other multiplier the jury prefers, whichever is greatest."

When a federal statute provides for treble

damages (or some other multiplier), judges regularly conclude that punitive damages may not be added. Congress has specified the multiplier, which judges and juries alike must respect. Thus, for example, Shea v. Galaxie Lumber & Construction Co., 152 F.3d 729, 734 (7th Cir. 1998), holds that punitive damages may not be added to the statutory double damages for wilful violations of wages and hours requirements under the Fair Labor Standards Act. We have concluded that the anti-retaliation section of the FLSA does permit punitive damages, because retaliation claims are not covered by the double-damages rule, Travis v. Gary Community Mental Health Center, Inc., 921 F.2d 108 (7th Cir. 1990), but that decision has been controversial; other circuits have held that because some portions of the FLSA provide for multipliers, punitive awards are impermissible across the board. E.g., Snapp v. Unlimited Concepts, Inc., 208 F.3d 928 (11th Cir. 2000). No court believes that punitive damages may be awarded for antitrust violations, the best known of the federal treble-damages statutes, although some kinds of antitrust violations are concealable. See Brown v. Presbyterian Healthcare Services, 101 F.3d 1324, 1331-32 (10th Cir. 1996) (holding that punitive damages may not be awarded for violations of federal antitrust laws). Indeed, no case of which we are aware holds that, when Congress specifies a damages multiplier, the jury may select a different and higher multiplier by awarding punitive damages under federal law.

When denying Z Frank's motion to reduce the punitive award, the district judge wrote that "odometer roll backs are a nationwide problem [that] needs to be deterred. Both the state of Illinois and the United States have seen fit to enact statutes to deal with this problem. An award of punitive damages such as the one awarded by the jury in this case will not fall on deaf ears. Automobile agencies who would not be scared off by a small award of compensatory damages, even if the award is trebled, will undoubtedly be scared off by this award of over one-half million dollars." 1999 U.S. Dist. Lexis 9462 at *11. Indeed they will be "scared off" by awards 40 or more times the loss (and, in this case, 65 times the profit from the wrong). They may be scared right out of the used-car business. Excessive awards tend to discourage participation in the underlying economic activity, for some level of error by employees is a risk of doing business. Auto dealers also would be terrified by the prospect of a judge ordering the Army to drive an M1-A1 main battle tank through their showrooms, flattening their inventory. High penalties deter more, but this is not to say that higher always is better. One problem with an excessive penalty

is that it attracts too many enforcers, who pursue private riches. This concern has led to proposals to decouple damages from recovery, so that the defendant pays more than the plaintiff receives, with the difference going to the public fisc. E.g., Marcel Kahan & Bruce Tuckman, Special Levies on Punitive Damages: Decoupling, Agency Problems, and Litigation Expenditures, 15 Int'l Rev. L. & Econ. 175 (1995). Section 32710 does not take that approach, however, nor does it say that more is always better. Congress decided that the right penalty is trebling, with a minimum of $1,500 to ensure some sting even when the harm is slight. The district judge, like the jury, obviously believed this inadequate. But disagreement with an Act of Congress is not a good reason to amerce a defendant.

Adequacy of deterrence cannot be evaluated by limiting attention to private awards. Section 32709 authorizes both civil suits and criminal prosecutions by the United States, plus civil suits by states. Section 32709(a) is particularly telling. It permits the United States to enforce the odometer-tampering rules by civil suits for damages and prescribes "a civil penalty of not more than $2,000 for each violation. A separate violation occurs for each motor vehicle or device involved in the violation. The maximum penalty under this subsection for a related series of violations is $100,000." Rolling back the odometer (or lying about the mileage) on one car can support no more than a $2,000 penalty; for 25 cars the penalty is $50,000 at most; and the maximum penalty for more than 50 cars is $100,000. What sense could it make to have a statutory cap of $100,000 on the civil penalty for 50 or more violations yet allow a jury to impose a $550,000 penalty for a single violation? Punitive damages are a form of civil penalty, going to a victim rather than the public but serving the same function. Section 32709 demonstrates that for violations of this statute the sky is not the limit. A victim is entitled to treble damages, and the maximum civil penalty on top of trebling is $2,000 per car, plus criminal penalties under sec.32709(b) for really severe infractions.

If the federal odometer statute does not authorize punitive damages, how about the state odometer statute? The state law is essentially identical to the federal, going out of its way to ensure that plaintiffs do not recover cumulatively under the two laws. When Illinois enacts a twin to a federal law, state judges generally hold that the state law has the same meaning as the federal. Luken v. Lake Shore & M.S. Ry., 248 Ill. 377, 383, 94 N.E. 175, 178 (1911); Branson v. Department of Revenue, 168

Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995). In Verdonck the state's appellate court announced this approach to 625 ILCS 5/3-112.1 in particular. 226 Ill. App. 3d at 491, 590 N.E.2d at 550. See also Buechin v. Ogden Chrysler-Plymouth, Inc., 159 Ill. App. 3d 237, 253, 511 N.E.2d 1330, 1339-40 (2d Dist. 1987). Moreover, sec.3-112.1(e) says that the defendant is liable in an amount equal to the sum of treble damages (or $1,500 if greater) plus attorneys' fees; greater damages cannot be "equal to" the statutory formula. Thus we predict that the Supreme Court of Illinois would hold that punitive damages may not be awarded for violations of 625 ILCS 5/3-112.1.

Perhaps anticipating this conclusion, Perez added claims under the common law of Illinois. Any conduct that violates 625 ILCS 5/3-112.1, Perez insisted, also is common law fraud and therefore supports an award of punitive damages. Perez also contended that Z Frank told other lies--in particular, that the car had only one prior owner and was in good condition. Unfortunately, neither the district judge nor the jury distinguished among potential bases for punitive damages. The jury was not asked, for example, to make separate awards for the mileage misrepresentation and for any other misrepresentations. Indeed, we cannot be certain that the jury found any other misrepresentations. It found that Z Frank violated the odometer statutes with intent to defraud, but its separate verdict with respect to the common-law claim is ambiguous. It answered "yes" to the question:

Did Z Frank Oldsmobile, Inc. know the false statement or statements of material fact it made in connection with the sale of plaintiff's vehicle were false, or did it make the same statement or statements with a reckless disregard of whether they were true or false?

This not only is a compound question, making a simple "yes" ambiguous, but also fails to specify which "statement or statements" were false. Just the statements about the odometer, or were some other statements false? The question did not permit the jury to find, for example, that Z Frank's statements about mileage were intentionally false, but statements about the condition of the car were negligently false (or even true). A single false statement on any subject would lead to a "yes" answer. Differences in the burden of persuasion further compound matters: the judge instructed the jury that Perez had to establish common-law fraud by clear and convincing evidence, while issues concerning accuracy of the odometer were to be decided by a preponderance of the evidence. Because this

question came immediately after the odometer-statute question, the jury may well have concentrated on statements about mileage. That possibility finds support in the jury's punitive awards: $550,000 against each of Pour and Z Frank, although Pour was responsible only for odometer tampering. Perhaps the jury thought Z Frank less responsible than Pour on this account (for Pour rolled back the mileage) and more responsible for other deceits, but exactly offsetting differences would be surprising. Because the verdict is ambiguous, however, we must consider separately the possibility of punitive tort awards for fraud about the odometer and about other matters.

Illinois has never squarely faced the question whether punitive damages may be awarded under the common law when 625 ILCS 5/3-112.1, which does not itself authorize punitive awards, covers the same ground. One appellate decision (Verdonck) assumes that the answer is yes, provided that the awards are not cumulative, but the litigants did not present the issue for decision. Cf. Ciampi v. Ogden Chrysler Plymouth, Inc., 262 Ill. App. 3d 94, 634 N.E.2d 448 (2d Dist. 1994). For the reasons we have already given when explaining why punitive damages are not proper under state and federal odometer statutes, the best answer to this question--and the one we predict that the Supreme Court of Illinois will adopt when it finally considers the issue--is no. What point would the statutes serve if in the end the common law of fraud were the effective authority to award damages? The state's legislature could have said that the award is to be determined under the law of fraud, or it could have written that treble damages are just a minimum, preserving to plaintiffs all common-law remedies. But neither state nor federal law contains a savings clause for tort remedies. Federal law provides that state odometer statutes are not preempted, 49 U.S.C. sec.32711, but lacks a similar provision for state tort law. The Illinois odometer statute does not say that common-law claims are unaffected. Both statutes provide that the right award is the greater of treble damages or $1,500. Treble damages are a form of punitive damages. See Vermont Agency of Natural Resources v. United States ex rel. Stevens, 120 S. Ct. 1858, 1869-70 (2000); Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 639 (1981). The legislative decision to have a multiplier of three is not honored when a court permits a jury to select a different punitive multiplier. Although one federal appellate decision more than a generation old concludes that punitive damages under state common law are compatible with the federal odometer statute, see Edgar v. Fred Jones Lincoln-Mercury of Oklahoma City, Inc., 524 F.2d

162 (10th Cir. 1975), more recent decisions have drawn its methodology into question. E.g., Geier v. American Honda Motor Co., 120 S. Ct. 1913 (2000); Rice v. Gustavel, 891 F.2d 594, 597 (6th Cir. 1989). But this is not a subject we need pursue, given our conclusion that the Supreme Court of Illinois would treat the state's own odometer law as establishing the maximum award for misrepresentations about mileage.

Punitive awards for the single-owner and good-condition representations would not cover the same ground as the odometer-tampering statutes, so they cannot be ruled out. But neither can this award be sustained on that ground, given the verdict's ambiguity. We therefore remand for a new trial, limited to Perez's claim that Z Frank committed frauds other than misrepresenting the car's mileage. Compensatory damages have been fixed, so the trial will be limited to liability for frauds other than mileage and, if liability is established, to punitive damages. The judge should tell the jury about the damages for the rollback, so that jurors will not be tempted to confer duplicative recovery, and should ensure that any further punitive recovery is reasonable in relation to the award already made. Illinois (we are confident) would not treble the damages for the more serious misrepresentation concerning mileage yet allow unlimited damages for puffery such as "this car is in good condition."

Even criminal sentencing, once the subject of unbridled discretion by district judges, is now controlled by principles of proportionality. If the United States had prosecuted Z Frank Oldsmobile, Inc., for what it did to Perez, the maximum penalty would have been a fine of $11,500. See U.S.S.G. sec.2N3.1(a) (setting an offense level of 6 for a single odometer violation), sec.8C2.4(d) (fine of $5,000 for a level 6 offense by an organization, though an increase to the victim's actual loss is authorized by sec.8C2.4(a)(3)). (We disregard the culpability adjustment under sec.8C2.5, which cannot be calculated on this record, but for a modestly sized organization such as an auto dealership this adjustment could not substantially increase the fine for a first conviction.) Illinois does not treat violation of 625 ILCS 5/3-112.1 as a crime, so its legislature has not opted for a higher punishment than Congress specified. Punitive damages should not be used as an escape hatch, subject only to the whim of judge and jury.

Although the parties have devoted considerable attention to constitutional limits on punitive damages, see BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), these come into play only

after the assessment has been tested against statutory and common-law principles. When the Supreme Court is asked to review a state court's award, the Constitution is the only constraint, for the state judges determine the meaning and application of state law. But when a plaintiff seeks punitive damages in a federal case, it is unnecessary to look for limits in the Constitution. See Donovan v. Penn Shipping Co., 429 U.S. 648, 649 (1977) ("[t]he proper role of the trial and appellate courts in the federal system in reviewing the size of jury verdicts is . . . a matter of federal law."); Browning-Ferris Industries v. Kelco Disposal, Inc., 492 U.S. 257, 277-80 (1989). Federal judges may, and should, insist that the award be sensible and justified by a sound theory of deterrence. Random and freakish punitive awards have no place in federal court, and intellectual discipline should be maintained. Zaz Designs v. L'Oreal, S.A., 979 F.2d 499 (7th Cir. 1992); Kemezy v. Peters, 79 F.3d 33 (7th Cir. 1996); Cass R. Sunstein, Daniel Kahneman & David Schkade, Assessing Punitive Damages, 107 Yale L.J. 2071, 2078-79 (1998). If the award is well justified, then it is also constitutionally sound; and if it is not justified, then a new trial may be awarded using "federal standards developed under Rule 59" (Browning-Ferris, 492 U.S. at 279) without resorting to constitutional reasoning.

Because we are remanding for further proceedings, we also vacate the award of attorneys' fees and costs, which should be recalculated in light of the final outcome. Still, two comments are in order.

First, the district court's total award of $236,911, see 2000 U.S. Dist. Lexis 2037 (N.D. Ill. Feb. 18, 2000), is awfully hard to swallow. It represents more than 1,200 hours at $185 per hour, or about two-thirds of a year's billable time for a hard-working lawyer. How can a case this simple, which required only three trial days and led to a compensatory award of $11,500, have commanded that investment of resources? In Haluschak, an odometer case that yielded compensatory damages of $7,500 before trebling, the plaintiffs' legal costs were only $12,560-- and Haluschak was tried twice! This question requires careful attention on remand.

Second, the district court assumed that the reasonableness of attorneys' fees must be assessed in relation to the total award, including punitive damages. If either the state or federal odometer statute supported punitive damages, that might be so. Given our holding that any recovery in excess of $34,500 depends on state tort law, however, the award looks

unreasonable, for no sensible person spends $236,000 in pursuit of $34,500 (or even $163,500, treble the jury's original compensatory award). See Cole v. Wodziak, 169 F.3d 486 (7th Cir. 1999). The state and federal odometer-tampering statutes authorize awards of attorneys' fees only for success in obtaining recoveries under those statutes. Illinois does not provide for fee-shifting in tort cases. Outlays in pursuit of common-law punitive damages therefore must be borne by Perez and may not be shifted to Z Frank. See Roche v. Fireside Chrysler-Plymouth, Mazda, Inc., 235 Ill. App. 3d 70, 86-87, 600 N.E.2d 1218, 1228-29 (2d Dist. 1992).

Reversed and Remanded