In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2102

CHARLES E. ANDERSON, Trustee on behalf of
Painters' District Council No. 30 Health and
Welfare Fund, et al.,

*Plaintiffs-Appellants,*

*v.*

AB PAINTING AND SANDBLASTING
INCORPORATED, an Illinois Corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:04-cv-03302—**John F. Grady**, *Judge.*

ARGUED FEBRUARY 20, 2009—DECIDED AUGUST 20, 2009

Before BAUER, MANION and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* The Painters' District Council
No. 30 Health and Welfare Fund and two other multi-
employer employee benefit plans (collectively "the
Funds"), through their trustee Charles E. Anderson,

successfully sued to collect delinquent contributions from AB Painting and Sandblasting, Inc., a Fund participant. The district court awarded attorney's fees to the Funds, as required by the Employee Retirement Income Security Act of 1974 ("ERISA"), but in an amount much lower than requested because the court was not comfortable with what it perceived to be the disproportionate amount of money spent litigating the Funds' relatively small claim. The Funds argue that this concern with proportionality was misplaced and that a new fee calculation is required. We agree.

## I. BACKGROUND

Collective bargaining agreements with the local painters' chapter of the AFL-CIO required AB Painting to make regular contributions to the Funds. Under the agreements, AB Painting was to self-report its obligations to the Funds based on certain factors. AB Painting failed to fully report or pay its required contributions. After discovery, which was frequently delayed by AB Painting's lack of cooperation, the district court granted summary judgment in favor of the Funds for the entire amount of the claimed delinquency plus interest, for a total of approximately $6,500. However, the court reduced the Funds' attorney's fees award from the requested $50,885.90 to $10,000. The court labeled the fee request "disproportionate" to the damages claimed and explained that "in view of the small amount involved . . . the time spent on the case was excessive. Charging over $50,000.00 in attorney's fees to collect, at most, $5,000.00 cannot be justified."

## II. DISCUSSION

On appeal, the Funds argue that the district court did not conduct a proper fee analysis and was wrongly concerned with the relationship between the actual damages and the requested attorney's fees. We review an award of attorney's fees for an abuse of discretion. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1311 (7th Cir. 1996). But we review a district court's legal analysis and methodology de novo. *Jaffee v. Redmond*, 142 F.3d 409, 412-13 (7th Cir. 1998); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000).

When a trustee of an ERISA benefit plan prevails in an action to recover delinquent contributions, the district court is required to award "reasonable attorney's fees." 29 U.S.C. § 1132(g)(2)(D). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This "lodestar" figure can then be adjusted based on the twelve *Hensley* factors. *Id.* at 434 n.9.[1] However, "many of these factors

---

[1] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

(continued...)

usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n.9.

In this case, the district court was concerned with the concept of proportionality between the attorney's fees and the actual damages. Proportionality can refer to multiple concepts in the realm of attorney's fees. One of these concepts addresses the situation where a plaintiff recovers a very small percentage of the damages claimed and the attorney's fees are consequently reduced. *Cole v. Wodziak*, 169 F.3d 486 (7th Cir. 1999), which the district court wrongly relied on, is such a case. This type of proportionality seems to be losing favor and is irrelevant in our case because the Funds recovered the entire amount of the claimed deficiency. *Compare Cole*, 169 F.3d at 489 ("[R]ecovering less than 10% of the demand is a good reason to [abandon the lodestar method, apply *Farrar v. Hobby*, 506 U.S. 103 (1992), and] curtail the fee award substantially.") *with Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 822-23 (7th Cir. 2009) (recovering less than 7% of amount sought is not reason to apply *Farrar* if damages are not nominal).

The proportionality we address here involves a comparison between a plaintiff's damages and his attorney's

---

[1] (...continued)

reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.* at 430 n.3.

fees. In this context, we have "rejected the notion that the fees must be calculated proportionally to damages.*" Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 194 (7th Cir. 1994); *see Wallace v. Mulholland*, 957 F.2d 333, 339 (7th Cir. 1992); *see also Estate of Borst v. O'Brien*, 979 F.2d 511, 516-17 (7th Cir. 1992); *see also Littlefield v. McGuffey*, 954 F.2d 1337, 1350-51 (7th Cir. 1992).

This seems to us to be the only logical position, considering the purpose of attorney's fees statutes. Fee-shifting provisions signal Congress' intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives of the American Rule. "The function of an award of attorney's fees is to encourage the bringing of meritorious . . . claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (quotation marks and citation omitted). Or, more simply stated, fee-shifting "helps to discourage petty tyranny." *Barrow v. Falck*, 977 F.2d 1100, 1103 (7th Cir. 1992).

Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy. *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000). That is the whole point of fee-shifting—it allows plaintiffs to bring those types of cases because it makes no difference to an attorney whether she receives $20,000 for pursuing

a $10,000 claim or $20,000 for pursuing a $100,000 claim. *See id.* Fee-shifting would not "discourage petty tyranny" if attorney's fees were capped or measured by the amount in controversy. *Barrow*, 977 F.2d at 1103; *see Tuf Racing*, 223 F.3d at 592.

Some of our cases have expressed concern where attorney's fees overshadowed the damages awarded, but only because some other element of the case did not seem reasonable. For example, in *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 625 (7th Cir. 2000), we noted that the fee was "awfully hard to swallow." But our concern was not so much with the amount of the fee as with the disparity between the number of hours billed and the seeming simplicity of the case (1,200 hours were spent pursuing a rolled-back odometer claim). *See id.* That was a fair observation. Simple cases should require fewer hours than complex cases. And many claims for small damages amounts will be simple cases. But not always; it works as a rule of thumb, but not as a rule of law. Which is why we simply stated that the "question requires careful attention on remand." *Perez*, 223 F.3d at 625.

This is also how we read *Moriarty v. Svec*, 223 F.3d 955 (7th Cir. 2000), another case cited by the district court. In *Moriarty*, we stated that, "[w]hile . . . disproportionality is not determinative and this court has approved attorney's fees many times the amount of damages recovered, . . . the district court's fee order should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." *Id.* at 968. We quickly reiterated "that any disproportionality that may be

present in this case does not mean that the amount of attorney's fees awarded . . . was an abuse of discretion, but only that the district court should consider such proportionality factors in exercising its discretion in fashioning a reasonable attorney's fee." *Id.*

To say that a court should give "increased reflection" before awarding attorney's fees that are several times the amount of the actual damages is nothing more than to say that a comparatively large fee request raises a red flag. As we just said, in many cases the amount in controversy and the complexity of the case will track with one another. But small claims can be complex and large claims can be very straightforward. So while a fee request that dwarfs the damages award might raise a red flag, measuring fees against damages will not explain whether the fees are reasonable in any particular case.

Reasonableness has nothing to do with whether the district court thinks a small claim was "worth" pursuing at great cost. Fee-shifting statutes remove this normative decision from the court. If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing. The court must then assume the absolute necessity of achieving that particular result and limit itself to determining whether the hours spent were a reasonable means to that necessary end.[2]

---

[2] Of course, if a party achieves only partial success as that term is used in *Hensley*, then the district court must determine how

(continued...)

For example, it is absolutely permissible to spend $100,000 litigating what is known to be a $10,000 claim if that is a reasonable method of achieving the result. But it might not be a reasonable method. Proportionality then, where useful at all, could alert the court to situations where we might expect that the same result could have been achieved more efficiently. But if, for some reason, the hours expended were reasonable in a particular case, then so is the fee.

It seems that the claim in front of us could have been resolved at a greatly reduced cost if AB Painting had cooperated with discovery requests and settlement discussions, obeyed the district court's orders, and not filed a series of frivolous motions after the court had already entered judgment for the Funds. The district court did not suggest how the Funds could have resolved the case more efficiently. So even though the fee request was more than seven times the amount of damages, there may have been good cause.

---

[2] (...continued)
many hours were related to advancing the winning claims. *See Hensley*, 461 U.S. at 434-37; *see also Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) ("A partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus related grounds within the meaning of *Hensley*."); *see also Jaffee*, 142 F.3d at 413-17 (explaining how unsuccessful claims can relate to successful ones). Since the Funds succeeded on all claims, we need not explore this topic any further.

And even in a straightforward case, where an early resolution is reached, it would not be surprising to find that the cost of bringing the claim exceeded the amount in controversy. Again, fee-shifting is designed to encourage such claims. *See Tuf Racing*, 223 F.3d at 592.

### III.  CONCLUSION

We REVERSE and REMAND, according to Circuit Rule 36, for a new calculation of attorney's fees. An appropriate amount of fees for this appeal should also be awarded.