2016 IL App (1st) 150791

THIRD DIVISION
June 29, 2016

No. 1-15-0791

| | | |
|---|---|---|
| ELIZABETH MENDEZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 12 L 9049 |
| | ) | |
| THE TOWN OF CICERO, | ) | Honorable |
| | ) | Thomas R. Mulroy, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-appellee Elizabeth Mendez filed suit against her employer, defendant-appellant the Town of Cicero when Cicero retaliated against her for reporting alleged sexual harassment by the deputy police superintendant towards a subordinate. Specifically, Mendez alleged that she was transferred from her position as the executive administrative assistant to the police superintendant to a clerk position in the building department. A jury agreed with Mendez that the transfer was retaliatory, but did not award monetary relief for Mendez's alleged emotional distress and lost future earnings. The court separately ruled on Mendez's equitable claims that she was entitled to reinstatement and granted her motion for attorney fees under the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2014)). Cicero contends that the award of $330,412.09 in attorney fees was excessive given the jury's determination that Mendez was not entitled to damages. Finding no error, we affirm.

¶ 2        Mendez began working for Cicero in 1989, and in 2010, she was employed as executive administrative assistant to the police superintendant. On May 21, 2010, she observed the deputy superintendant sexually harass a coworker. She reported what she had seen on May 24, 2010, and in September of that year, she received a letter indicating that the town had investigated and had taken appropriate action. Approximately three months later, the new police superintendant, who took office in November 2010, informed Mendez that she was being transferred to the building department as a clerk, where she would continue to receive the same salary and benefits.

¶ 3        Mendez filed a complaint with the Illinois Department of Human Rights (IDHR) in January 2011, alleging sexual harassment and retaliation in the form of a disciplinary warning and a transfer. The IDHR dismissed the sexual harassment and retaliatory discipline claims for lack of jurisdiction, but recommended a finding of substantial evidence for the retaliatory transfer claim.

¶ 4        In August 2012, Mendez filed suit against Cicero, along with town president Larry Dominick, police superintendant Bernard Harrison, and human resources director Derek Dominick (Larry's son), alleging sexual harassment and retaliation in violation of the Act, as well as a violation of the Whistleblower Act (740 ILCS 174/15) (West 2014)). She sought punitive and compensatory damages as well as back pay, front pay, lost future wages, prejudgment interest and attorney fees and costs. In addition to monetary damages, Mendez also sought reinstatement to her former position.

¶ 5        Mendez amended her complaint in October 2012 to include allegations of harassment and a hostile work environment in her new position in the building department, allegations which were also pending before the IDHR as of October 15, 2012.

¶ 6        As the parties began to litigate these issues, they simultaneously embarked on settlement negotiations. Mendez initially proposed two options: (1) monetary relief of $200,000, along with removal of all "disciplinary documents" from Mendez's personnel file, and a return to either her previous position or a comparable position within the police department with a salary of $60,000; or (2) damages of $550,000, along with removal of "disciplinary documents" from Mendez's personnel file and maintenance of Mendez's current work schedule in the building department. Cicero countered with an offer of $10,000, which Mendez rejected.

¶ 7        Negotiations resumed shortly before trial in July 2014. Cicero offered $75,000 without Mendez's resignation or $150,000 with her resignation, while Mendez's final demand was $300,000 for a release of all claims, or $1 million for her resignation. As the parties did not reach an agreement, trial proceeded in August 2014, at which point the only charge pending was against Cicero for the retaliatory transfer. (The other counts and defendants had been dismissed either voluntarily or involuntarily).

¶ 8        At trial, the issues of liability as well as compensatory damages for emotional harm and lost wages were presented to the jury and Mendez's claim for equitable relief in the form of reinstatement was reserved for the court. Mendez asked the jury for damages in the amount of $150,000 for emotional distress and $30,000 for lost future earnings. The jury found in favor of Mendez on the retaliation claim, but declined to award monetary damages for emotional distress or long-term economic injury.

¶ 9        Following the conclusion of trial, on August 27, 2014, Mendez moved for equitable relief from the court, asking to be reinstated to her former position as executive administrative assistant to the police superintendant, and for back pay in the amount of $34,982, which represented the amount she earned in overtime or "additional pay" per year in her former position. The court

ordered briefing on the motion and further instructed the parties to discuss the practicability of reinstating Mendez to her former position.

¶ 10      While briefing proceeded on Mendez's motion for equitable relief, on November 13, 2014, Cicero, without consulting Mendez, unilaterally transferred her not to her former position, but to the position of executive assistant to the commander of the gang crime tactical unit, effective November 17. The position offered the same salary and benefits as her current position in the building department. Cicero explained that Mendez's former position as executive administrative assistant to the police superintendant had been filled by the former executive assistant to the commander in the gang crime unit, who happened to be the sister of the police superintendant. The next day, Mendez filed an emergency motion to maintain the status quo, which the trial court granted, ordering that Cicero allow Mendez to remain in her current position in the building department until Mendez's motion for equitable relief was decided.

¶ 11      The court held a hearing on Mendez's motion in December 2014 and ultimately held that Mendez was entitled to reinstatement as executive administrative assistant to the police superintendant. However, as that position was currently held by the police superintendant's sister, the parties reached an agreement that Mendez would instead be transferred to the position of executive assistant to the commander in the gang crime unit, the same position to which Cicero unilaterally proposed to transfer Mendez earlier. The court denied Mendez's request for back pay, as well as her request that she receive a $10,000 salary increase in her new position, commensurate with what the current executive administrative assistant to the police superintendent was currently earning.

¶ 12      Following the court's resolution of all claims, Mendez's counsel filed a petition for attorney fees in the amount of $346,337 and costs of $20,198. After briefing by the parties and a

hearing, the circuit court awarded Mendez's counsel $314,489 in fees and $15,923.09 in costs, deducting (1) costs of $4274.91 for in-house copying, in-house faxes, and the use of Westlaw; (2) fees of $15,993.50 for various depositions in support of Mendez's 2012 IDHR charge of continuing harassment and a hostile work environment in the building department; and (3) fees of $15,854.50 for litigating claims against Larry and Derek Dominick as individual defendants and the claim arising out of the Whistleblower Act. The trial court denied Cicero's request to reduce the fees by 90% to account for what the town characterized as Mendez's "nominal" success.

¶ 13                                                  ANALYSIS

¶ 14            The sole issue on appeal is the reasonableness of the circuit court's award of attorney fees. Pursuant to the Act, a court may, in its discretion, award attorney fees and costs to the prevailing party. 775 ILCS 5/10-102(C)(2) (West 2014). The purpose of this provision is to ensure proper representation of complainants and to enforce the important public policies in the Act. See *Rackow v. Human Rights Comm'n*, 152 Ill. App. 3d 1046, 1064 (1987); see also *Mathur v. Board of Trustees of Southern Illinois University*, 317 F.3d 738, 743 (7th Cir. 2003) ("Fee-shifting statutes in civil rights legislation are intended to allow litigants access to attorneys who would otherwise be inaccessible, given the low retainers many plaintiffs can afford.").

¶ 15            Initially, the parties dispute the standard of review. The Act provides that the allowance of attorney fees and costs is in the discretion of the court (775 ILCS 5/10-102(C)(2) (West 2014)), and indeed, our supreme court has applied an abuse of discretion standard when reviewing a fee award (*Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 494 (1996)). A court abuses its discretion if its decision is arbitrary, fanciful, or

unreasonable. *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 61 (quoting *Schmitz v. Binette*, 368 Ill. App. 3d 447, 452 (2006)).

¶ 16    Nevertheless, Cicero asks us to review the court's decision *de novo*, arguing that the court failed to consider relevant legal principles, specifically, the Supreme Court decisions of *Farrar v. Hobby*, 506 U.S. 103 (1992), and *Hensley v. Eckerhart*, 461 U.S. 424 (1983). But a court's failure to apply correct legal principles does not preclude us from reviewing for an abuse of discretion. See, *e.g.*, *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009) ("A circuit court abuses its discretion when it makes an error of law."). And in any event, there was no such failure here. In its written decision, the court cited *Hensley*, as well as *Briggs v. Marshall*, 93 F.3d 355, 361 (7th Cir. 1996), which in turn cited *Farrar.* It does not follow that because the court did not explicitly outline its application of the principles detailed in *Farrar* and *Hensley*, the court ignored them. Thus, we reject Cicero's request for *de novo* review and instead review for an abuse of discretion.

¶ 17    Cicero contends that the court's award was unreasonable given that Mendez obtained what Cicero characterizes as "nominal" or *de minimis* relief and seeks vacatur of the court's order, or, alternatively, a reduction of 80% to 90% in the fees awarded. According to Cicero, a nominal victor is entitled to, at most, a minimal fee award, and may not be entitled to attorney fees at all. See *Farrar*, 506 U.S. at 114-15 (degree of a plaintiff's success is most important factor in determining reasonableness of attorney fees).[1] We disagree.

¶ 18    First, the Seventh Circuit recently observed that the argument that fees should be proportional to the plaintiff's damages is "losing favor." *Anderson v. AB Painting &*

---

[1]Mendez correctly notes that we are not bound by federal decisions, but they can provide guidance and serve as persuasive authority. See *People v. Haywood*, 407 Ill. App. 3d 540, 546 (2011). Indeed, we have routinely looked to federal law in reviewing a circuit court's award of attorney fees. See, *e.g.*, *Brewington v. Illinois Department of Corrections*, 161 Ill. App. 3d 54, 63-65 (1987); *Becovic v. City of Chicago*, 296 Ill. App. 3d 236, 240-42 (1998); *Country Mutual Insurance Co. v. Styck's Body Shop, Inc.*, 396 Ill. App. 3d 241, 252-54 (2009).

*Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009). The court explained that fee-shifting provisions are meant to ensure that "even small violations of certain laws" are checked through private litigation. *Id.* And given that litigation is expensive, "it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy." *Id.* But that is the purpose of fee-shifting: it ensures that meritorious claims are not abandoned because of the prospect of obtaining minimal monetary damages. *Id.* In other words, "fee-shifting 'helps to discourage petty tyranny.' " *Id.* (quoting *Barrow v. Falck*, 977 F.2d 1100, 1103 (7th Cir. 1992)).

¶ 19        Second, and more importantly, we do not agree that Mendez, like the *Farrar* plaintiffs, obtained only a nominal victory. The plaintiffs in *Farrar* sought $17 million in damages but ultimately obtained only $1 after a jury found that the defendant had committed an unspecified violation of the plaintiffs' civil rights. *Farrar*, 506 U.S. at 106-07. In contrast, here a jury specifically found that Cicero transferred Mendez in retaliation for reporting sexual harassment of another employee. Then, the court ordered her reinstated from her position as a "clerk" in the building department to her prior position as executive administrative assistant to the police superintendant. Ultimately, Mendez accepted the position of executive assistant to the commander of the gang crime unit. This was a significant boon, as she was restored to her former title in a position comparable to that which she occupied prior to her retaliatory transfer. While Mendez did not obtain a money judgment, the Commission has previously noted that the purpose of the Act is not necessarily to provide monetary relief (see *Brewington*, 161 Ill. App. 3d at 66-67), and Mendez's reinstatement vindicated her right under the Act to be free from retaliation for reporting sexual harassment. See 775 ILCS 5/6-101 (West 2014).

¶ 20        In an attempt to minimize the significance of Mendez's victory, Cicero argues that Mendez initially refused to accept its unilateral decision, in November 2014, to transfer her to

the gang crime unit, and it was only after the court ordered reinstatement that Mendez accepted the same position. But contrary to Cicero's contention, we do not view this as an attempt by Mendez to obtain "exorbitant" attorney fees. Indeed, by the time Cicero attempted to short-circuit the hearing on Mendez's request for reinstatement, Mendez had already succeeded at trial in proving that her transfer was retaliatory and it is apparent that the vast majority of Mendez's fees had already been accrued. Thus, Mendez's refusal to accede to the town's unilateral and belated effort to transfer her had little effect on the fee award to which she was entitled.

¶ 21     Significantly, in her motion to obtain equitable relief, Mendez did not solely seek reinstatement, but also back-pay, which Cicero's attempt to transfer her did not address. Mendez also sought a salary commensurate with that paid to the current executive administrative assistant to the police superintendant. By rejecting Cicero's unilateral transfer decision and proceeding to an evidentiary hearing, Mendez had the opportunity to argue for these additional benefits. While the court ultimately declined to provide her with that relief, she successfully negotiated the movement of her workspace from "a cubicle in a closet" to an office next to the deputy superintendant. Transferring an employee from a position carrying the title executive administrative assistant to one denoted as a "clerk," and from an office to a "cubicle in a closet"–even if the new position entails no change in pay–is precisely the type of "petty tyranny" that the Act is designed to discourage. See *Barrow*, 977 F.2d at 1103. Thus, we cannot conclude that Mendez's refusal to accept Cicero's unilateral decision to transfer her was a pretext to inflate attorney fees and costs.

¶ 22     Nor do we agree with Cicero that this case is akin to *Buckhannon Board & Home Care, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). There, the Court held that the plaintiff was not entitled to attorney fees because the West Virginia

legislature voluntarily made changes that remedied the Fair Housing Act and Americans with Disabilities Act violations the plaintiff alleged in its suit. *Id.* at 604-05. In other words, because the court did not provide the plaintiff with *any* relief, the plaintiff was not a prevailing party entitled to fees and costs. *Id.* at 605. Here, however, Mendez, having proved her retaliatory transfer claim, was clearly a prevailing party, and Cicero's unilateral decision to transfer her to the position of executive assistant to the commander of the gang crime unit still did *not* provide Mendez with all the relief she sought, which included back-pay, a salary increase, and relocation of her workspace. See *supra* ¶ 21.

¶ 23       Of course, the fact that Mendez obtained more than a *de minimis* victory does not necessarily mean she is entitled to the entire amount of fees claimed. Rather, after calculating the amount of hours spent on the litigation and multiplying by the reasonable hourly rate, the court may consider other factors, such as the novelty and difficulty of the legal question, the time and labor required, the skill necessary to perform the legal services properly, the plaintiff's failure to prevail on claims unrelated to the successful claims, and the amount involved and the results obtained. *Hensley*, 461 U.S. at 437; see also *Brewington*, 161 Ill. App. 3d at 64-66; *Berlak v. Villa Scalabrini Home for the Aged, Inc.*, 284 Ill. App. 3d 231, 242-43 (1996). Here, the court carefully considered these factors and reduced the fees claimed by 10%, specifically deducting fees for time expended on litigating claims against defendants that were ultimately dismissed from the action prior to trial. The court noted that although the plaintiff was unsuccessful in obtaining monetary relief, Cicero's violation of the Act, the court's award of reinstatement, and the thorough 3½ years of litigation all supported the remaining $330,412.09 in fees and costs. Our review of the record confirms the circuit court's conclusion. Cicero pursued numerous dispositive motions, filed no less than 10 motions *in limine* prior to trial, and pursued a motion

for judgment notwithstanding the verdict following the jury's adverse judgment on liability. A defendant who elects to aggressively litigate a claim under the Act is not well-positioned to criticize the correspondingly greater fees a plaintiff is required to incur to pursue her claims.

¶ 24    We cannot say that the fee award was either arbitrary or fanciful, or that no reasonable person would agree with the result. See *Maggi*, 2011 IL App (1st) 091955, ¶ 61. Thus, the trial court did not abuse its discretion in awarding Mendez fees and costs of $330,412.09, and its judgment is, therefore, affirmed.

¶ 25    Affirmed.